NOT FOR PUBLICATION                                    (Docket No. 18)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____
                                            :
RHONDA DENSON JOHNSON,                      :
                                            :
                   Plaintiff,               :       Civil No. 07-4212 (RBK/AMD)
                                            :
              v.                            :       **OPINION**
                                            :
ATLANTIC COUNTY, GARY MERLINE,              :
JAMES GAZZARA, JOSEPH BONDISKY,             :
JOHN BROWN, EDWARD PITTMAN, and             :
HENRY JAMEISON,                             :
                                            :
                   Defendants.              :
_____    :

**KUGLER**, United States District Judge:

          This matter comes before the Court upon a motion for summary judgment by Defendants

Atlantic County, Gary Merline, James Gazzara, Joseph Bondisky, John Brown, Edward Pittman,

and Henry Jameison (collectively, "Defendants").  Plaintiff Rhonda Denson Johnson ("Mrs.

Johnson" or "Plaintiff") filed a Complaint alleging discrimination and retaliation on the basis of

sex and race in violation of 42 U.S.C. § 2000e, et seq. and the New Jersey Law Against

Discrimination ("LAD"), N.J. Stat. Ann. § 10:5-1, et seq.  For the reasons expressed below, the

Court will grant in part and deny in part Defendants' motion for summary judgment.

**I.      BACKGROUND**

          Mrs. Johnson is a corrections officer at Atlantic County Jail and is employed by Atlantic

County Department of Public Safety.  In 1997, Mrs. Johnson filed a race and gender

discrimination lawsuit against the Atlantic County Jail along with seventeen other plaintiffs.  At that time, Warden Gary Merline was a sergeant in the Internal Affairs Division of the Atlantic County Jail.  There is some dispute over his level of involvement in the investigation of the 1997 lawsuit.  Plaintiff alleges that then-Sergeant Merline was in charge of investigating many of the disciplinary actions taken against the plaintiffs in that case; whereas, Atlantic County denies these allegations.  In any event, Gary Merline was promoted to Warden of the Atlantic County Jail in 2000, and the eighteen plaintiffs settled their discrimination suit in 2001.

On November 28, 2006, Mrs. Johnson filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging, in essence, that Warden Merline was "retaliating against her directly and indirectly by using his loyal supervisors [Lieutenant] Bondisky, [Sergeant] Gazzara, and [Sergeant] Laney, all of whom are white males" as a consequence of Plaintiff's involvement in the 1997 discrimination suit.  (Pl.'s Op. Br. Ex. B. at 1.)  The charge of discrimination provided three examples of Mrs. Johnson's complaints. First, Mrs. Johnson complained that in late 2005 - 2006, Warden Merline punished her on the basis of four complaints filed against her by Officer Brown.  According to Mrs. Johnson, the complaints were false and Warden Merline would not have punished Mrs. Johnson on the basis of these "false complaints" if she were a white male officer.  Second, Mrs. Johnson complained that during the Summer of 2006, Sergeant Gazzara and Lieutenant Bondisky refused to cover her duty position when she had to use the restroom, resulting in her urinating upon herself. According to Mrs. Johnson, she was "written up" by Warden Merline for lying during the subsequent investigation.  Finally, Mrs. Johnson complained that she was falsely accused of refusing to let a fellow officer into a pod to which she was assigned, which resulted in Sergeant

Laney yelling and screaming at her without listening to her side of the story.  The EEOC issued

Mrs. Johnson a right to sue letter on February 28, 2007.[1]

On May 15, 2007, Plaintiff filed a complaint against Atlantic County, Warden Merline,

Lieutenant Bondisky, Sergeant Gazzara, Officer Brown, Officer Pittman, and Officer Jamieson in

New Jersey Superior Court.  Sounding in four counts, the Complaint alleges retaliation, disparate

treatment on the basis of sex and race, and the maintenance of a hostile work environment.  On

June 12, 2009, Defendants moved for summary judgment on all counts of Plaintiff's Complaint.

On July 20, 2009, Plaintiff filed a brief in opposition, to which Defendants replied on July 27,

2009.  As a result, the motion is now ripe for disposition.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material

fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.

Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence

presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.

---

[1]  Subsequently, someone apparently keyed Plaintiff's vehicle.  Plaintiff alleges this
incident was never investigated by Internal Affairs even though similar incidents were
investigated and officers reimbursed for damages.  Defendants insist that the keying incident was
investigated and could not be verified.

3

1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  <u>Celotex</u>, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  <u>Corliss v. Varner</u>, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting <u>Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.</u>, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  <u>BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.   DISCUSSION

Plaintiff's discrimination claim is composed of three parts – retaliation, disparate

treatment, and hostile work environment – and is centered around the way in which Warden

Merline allegedly handled disciplinary policy at the Atlantic County Prison. Plaintiff's

retaliation theory is that whenever she was involved in an altercation at the prison, Warden

Merline would discipline her more harshly, or her alleged white male harassers more leniently, as

a consequence of Plaintiff's involvement in the 1997 discrimination suit. Likewise, Plaintiff's

disparate treatment theory is that, whenever she was involved in an altercation at the prison,

Warden Merline would discipline her more harshly, or her alleged white male aggressors more

leniently, than he would have had the sex and race of the participants been reversed. Finally,

Plaintiff alleges that Warden Merline's alleged disproportionate punishment regime functioned to

create a hostile work environment in which her alleged tormenters' harassment was encouraged.

In addition to her employer, Atlantic County, Plaintiff asserts liability against the named

defendants in their individual capacities.

  The starting point for discrimination claims under Title VII and the LAD is the familiar

McDonnell Douglas burden-shifting framework. O'Neill v. Potter, No. 07-5045, 2009 WL

2168712, at *3 (D.N.J. July 17, 2009) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792,

802 (1973)); Aurelio v. Bd. of Educ. of the Borough of Carteret, No. 06-3146, 2009 WL

1794800, at *3 (D.N.J. June 23, 2009) (citing Monaco v. Am. Gen. Assur. Co., 359 F.3d 296,

300 (3d Cir. 2004)). Plaintiff carries the initial burden of establishing a prima facie case.

O'Neill, 2009 WL 2168712, at *3; Aurelio, 2009 WL 1794800, at *3. Defendants may rebut

Plaintiff's prima facie case by articulating some legitimate, nondiscriminatory reason for the

taken action. O'Neill, 2009 WL 2168712, at *3; Aurelio, 2009 WL 1794800, at *3. Plaintiff

must then show that the so-called legitimate reason was in actuality a pretext for discrimination.

<u>O'Neill</u>, 2009 WL 2168712, at *3; <u>Aurelio</u>, 2009 WL 1794800, at *3.

**A.     The Local Civil Rules**

As an initial housekeeping matter, counsel for the parties are reminded that their conduct in this litigation is governed by the New Jersey Federal Practice Rules.  Local Rule 7.2 provides that (1) briefs "shall not exceed 40 ordinary typed or printed pages"; (2) "[a]ll margins shall not be less than one inch on sides, top, and bottom"; and (3) [e]ach page of a brief shall contain double-spaced text . . . ."  L.Civ.R. 7.2(b)-(d).  The thirty-nine page brief, drafted by Donna M. Taylor on Defendants' behalf, clearly violates the rules with respect to spacing and margin width. Although the Court will entertain Defendants' instant motion, Defendants would do well to abide by Rule 7.2 in future submissions to the Court.  <u>See, e.g.</u>, <u>In re Nice Systems, Ltd. Sec. Litig.</u>, 135 F. Supp. 2d 551, 558 n.6 (D.N.J. 2001) (motion denied without prejudice for failure to comply with Local Rule 7.2(b)).  Should Defendants feel the need to file an overlong brief in the future, they should apply for leave of Court as the rules require.  <u>See</u> L.Civ.R. 7.2(b) ("Briefs of greater length will only be accepted if special permission of the Judge or Magistrate Judge is obtained prior to submission of the brief.").

For his part, Plaintiff's counsel, Paul R. Melletz, would benefit from reviewing Local Rule 56.1, which provides, in pertinent part, that:

> The opponent of summary judgment shall furnish, with its opposition papers, a <u>responsive</u> statement of material facts, addressing each paragraph of the movant's statement, <u>indicating agreement or disagreement</u> and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion . . . .

L.Civ.R. 56.1(a) (emphasis added).  The purpose of this rule is to narrow the issues before the Court and to facilitate the Court's determination of whether facts are actually in dispute.  <u>Petinga</u>

v. Sears, Roebuck and Co., No. 05-5166, 2009 WL 1622807, at *1 n.1 (D.N.J. June 9, 2009).

Recognizing the importance of the responsive statement, the local rules provide that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L.Civ.R. 56.1(a). Although Plaintiff's statement of facts begins by responding to Defendants' statement, it quickly abandons this practice. As a result of its non-responsive nature, Plaintiff's counter-statement was largely unhelpful to the Court's analysis. Although, in this instance, the Court has sifted through Plaintiff's counter-statement in an attempt to identify disputed facts, in the future, Plaintiff's counsel would do well to craft his Rule 56.1 counter-statement in the responsive manner envisioned by the rules. See, e.g., Artiles v. Vitanza, No. 06-5427, 2009 WL 2426259, at *3 (D.N.J. Aug. 6, 2009) ("To the extent that the [non-movant's] responsive statement does not directly reply to a particular enumerated fact in [the movant's] statement, the Court deems that statement unopposed."). Should Plaintiff's counsel feel the need to mention disputed material facts outside the scope of the movant's statement, the local rules conveniently provide a mechanism for doing so. See L.Civ.R. 56.1(a) ("In addition, the opponent may also furnish a supplemental statement of disputed material facts . . . if necessary to substantiate the factual basis for opposition.").

**B.      Failure to Name Individual Defendants in EEOC Complaint**

As a procedural matter, Defendants argue that Plaintiff's claims against Lieutenant Bondiskey, Sergeant Gazzara, Officer Brown, Officer Pittman, and Officer Jamieson should be dismissed because Plaintiff did not name these individuals as respondents in the EEOC charge.

A litigant may not bring a Title VII action in federal court without first filing a charge with the EEOC. Fryar v. Verizon Wireless, No. 09-2303, 2010 WL 421121, at *5 (D.N.J. Feb. 1,

2010) (citing <u>Anjelino v. N.Y. Times Co.</u>, 200 F.3d 73, 93 (3d Cir. 1999); <u>Robinson v. Dalton</u>, 107 F.3d 1018, 1020-21 (3d Cir. 1997)); <u>Gutierrez v. McDonald's Corp.</u>, No. 09-4560, 2009 WL 3055358, at *2 (D.N.J. Sept. 21, 2009) (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973)).  Failure to file a charge is not a jurisdictional bar, but rather operates like a statute of limitations.  <u>Anjelino v. N.Y. Times Co.</u>, 200 F.3d 73, 87 (3d Cir. 1999) (citing <u>Hornsby v. U.S. Postal Serv.</u>, 787 F.2d 87, 89 (3d Cir. 1986)).  A district court can dismiss Title VII claims for failure to exhaust such administrative remedies.  <u>Id.</u> at 87-88.

Ordinarily, an individual may not bring a civil action under Title VII against a person or entity not named as a respondent in an EEOC charge.  <u>Schafer v. Bd. of Pub. Educ. of the Sch. Dist. of Pittsburgh</u>, 903 F.2d 243, 251 (3d Cir. 1990) (citing 42 U.S.C. § 2000e-5(f)(1)).[2]  The Third Circuit recognizes an exception, however, "when the unnamed party received notice and when there is a shared commonality of interest with the named party."  <u>Id.</u> at 252.  In determining whether the court should allow an action to proceed against defendants who were not named as respondents in an EEOC complaint, a court should look to four factors, namely:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

<u>Allen v. N.J. Dep't of Human Servs.</u>, No. 06-5229, 2007 WL 2306664, at *7 (D.N.J. Aug. 8,

---

[2]  42 U.S.C. § 2000e-5 provides, in pertinent part, "[W]ithin ninety days after the giving of [the right-to-sue letter] a civil action may be brought <u>against the respondent named in the charge</u> . . . ."  42 U.S.C. § 2000e-5 (emphasis added).

2007) (citing <u>Glus v. G.C. Murphy Co.</u>, 562 F.2d 880, 888 (3d Cir. 1977)).  No one single factor

is dispositive; each "should be evaluated in light of the statutory purposes of Title VII and the

interests of both parties."  <u>Allen</u>, 2007 WL 2306664, at *7 (citing <u>Glus v. G.C. Murphy Co.</u>, 629

F.2d 248, 251 (3d Cir. 1980)).

　　　In accordance with these principles, the Court concludes that Officer Jamieson is not a

proper party to Plaintiff's Title VII action.  Plaintiff did not name Officer Jamieson in the EEOC

charge of discrimination as a person who discriminated against her; in fact, Officer Jamieson is

not mentioned anywhere in the charge.  Moreover, Plaintiff does not list Officer Jamieson as a

person who harassed her on the EEOC Intake Questionnaire.

　　　Plaintiff clearly does not claim that Officer Jamieson's identity was unknown to her at the

time of filing.  Rather, Plaintiff argues that her suit against Officer Jamieson should be allowed to

continue because Officer Jamieson was allegedly put on notice as to his potential inclusion in the

instant discrimination action.  In support of this proposition, Plaintiff offers Atlantic County's

position statement to the EEOC in response to Plaintiff's EEOC charge.  As to the June 2006

incident, Atlantic County's position statement notes:

> The investigation revealed that on June 15, 2006, Ms. Johnson made an
> inappropriate, offensive and intimidating comment regarding Officer Brown that
> was overheard by a facility nurse and another officer.  The investigation found
> that the remark was unprofessional and was inconsistent with departmental
> standards of conduct while on duty.  It was further determined that Ms. Johnson
> did not tell the truth during the investigation when she stated that she did not
> speak to Officer Jamieson, or anyone else about the details surrounding her
> problems with Officer Brown.

(Defs.' Br. Ex. D. at 2.)

　　　Contrary to Plaintiff's assertions, this passing reference to Officer Jamieson in no way put

EEOC or Officer Jamieson on notice that Plaintiff might later accuse him of discrimination.  The purpose of the naming requirement is to put potential Title VII defendants on notice and to promote conciliation without resort to judicial proceedings.  Glus, 562 F.2d at 888.  Plaintiff's outright failure to mention Officer Jamieson's involvement in her discrimination before EEOC frustrated these purposes.  The Court therefore agrees with Defendants that the Title VII claims against Officer Jamieson should be dismissed.

As to Lieutenant Bondisky, Sergeant Gazzara, Officer Brown, and Officer Pittman, the Court reaches the opposite result.  On the charge of discrimination form, Plaintiff named only Atlantic County as the "employer, labor organization, employment agency, apprenticeship committee, or state or local government agency" that she believed discriminated against her.  Nonetheless, in a section describing the particulars of the alleged discrimination, Plaintiff indicated that in 2001, newly promoted Warden Gary Merline began retaliating against her "by using his loyal supervisors (Lt. Bondisky, Sgt. Gazzara, Sgt. Laney), who are all white males."[3]  This section continues to provide three examples of Plaintiff's complaints, which include arguably harassing conduct by Officer Brown, Sergeant Gazzara, and Lieutenant Bondisky.

Similarly, the EEOC Intake Questionnaire asked Plaintiff to provide the name of the organization against which she intended to lodge her complaint.  Plaintiff listed Atlantic County Department of Public Safety as this organization.  The questionnaire also asked Plaintiff to name those individuals who harassed her.  Plaintiff responded to this question by naming Warden Merline, Sergeant Gazzara, Lieutenant Bondisky, Officer Brown, Officer Pittman, Officer

---

[3]  Plaintiff has not named Sergeant Laney as a defendant in the instant action.

Dewers, and Officer Almeida.[4]

District courts should liberally construe Title VII's procedural requirements.  Id.  Thus, a number of courts have determined that reference to defendants in the body of an EEOC charge is sufficient to satisfy the exhaustion requirement as to those defendants.  See, e.g., Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A., 657 F.2d 890, 905-06 (D.C. Cir. 1981) ("[G]iven the Act's remedial purposes, charges are to be construed with 'utmost liberality' and parties sufficiently named or alluded to in the factual statement are to be joined."); Cook v. Applied Data Research, Inc., No. 88-2894, 1989 WL 85068, at *6 (D.N.J. July 20, 1989) ("In light of the liberality with which charges are to be construed, most courts have concluded that it is proper to exercise jurisdiction over a party who has been named or alluded to in a complainant's factual statement."); Acampora v. Boise Cascade Corp., 635 F. Supp. 66, 71 (D.N.J. 1986) (same).

The Court agrees with the reasoning of these decisions.  Reference to individual defendants within the body of an EEOC complaint and in response to specific questions on an EEOC intake questionnaire sufficiently notifies EEOC of the charges against the individuals and provides EEOC with an opportunity to notify the individual defendants, investigate the matter, and attempt conciliation.  See Sandom v. Travelers Mortg. Servs., Inc., 752 F. Supp. 1240, 1249 (D.N.J. 1990) (citations omitted).  Accordingly, summary judgment as to these defendants on Plaintiff's Title VII claims is inappropriate on this basis.

Defendants also argue that the claims should not be allowed to proceed against the individual defendants because their alleged acts of discrimination fall outside the scope of the

_____

[4]  Plaintiff has not named Officers Dewers or Almeida as defendants in the instant action.

EEOC complaint.

An EEOC charge must be "sufficient to put the EEOC on notice of the particular claims" at issue.  Fryar, 2010 WL 421121, at *5.  This requires the Court to decide whether Plaintiff's claims before this Court "fall within the scope of the prior EEOC complaint, or the investigation arising therefrom."  Id. (citing Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)); see Guitierrez v. McDonald's Corp., No. 09-4560, 2009 WL 3055358 at *3 (D.N.J. Sept. 21, 2009) (citing Anjelino v. N.Y. Times Co., 200 F.3d 73, 93 (3d Cir. 1999) ("It is well settled that suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle.").

Although the EEOC complaint clearly alleges that Warden Merline disproportionately punished Plaintiff in retaliation for her part in the 1997 discrimination suit, a liberal reading of the discrimination charge indicates that Plaintiff is also alleging that Lieutenant Bondisky, Sergeant Gazzara, Officer Brown, and Officer Pittman discriminated against her by their individual actions, quite apart from the allegedly disproportionate discipline dolled out by Warden Merline.  Given the liberality with which this Court must view the allegations in Plaintiff's EEOC charge, the Court concludes that the discrimination claims against these defendants falls within the charge's scope.  Thus, summary judgment is inappropriate as to these defendants on this basis.

### C.    Retaliation Claim

Plaintiff alleges that Warden Merline retaliated against her on the basis of her involvement in the 1997 discrimination suit by punishing her more severely, and her harassers more leniently, than he would have had Plaintiff not filed that suit.

Title VII prohibits an employer from discriminating against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Similarly, the LAD prohibits any person from "tak[ing] reprisals against any person . . . because that person has filed a complaint, testified or assisted in any proceeding under [the LAD]. . . ."  N.J. Stat. Ann. § 10:5-12(d).

To make out a prima facie case of retaliation under either statute, a plaintiff must show that she (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that there is a causal connection between her participation in the protected activity and the adverse employment action.  Green v. Port Auth. of N.Y. and N.J., No. 07-3910, 2009 WL 3627962, at *18 (D.N.J. Oct. 29, 2009) (citing Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006)); O'Brien v. Int'l Bus. Machines, Inc., No. 06-4864, 2009 WL 806541, at *33 (D.N.J. March 27, 2009) (citing Craig v. Suburban Cablevision, Inc., 660 A.2d 505 (N.J. 1995)).

Defendants do not contest that Plaintiff's filing of the 1997 discrimination constituted a protected activity, and the parties appear to agree that Warden Merline's alleged disproportionate punishment, if proven, would rise to the level of adverse employment action.  Rather, Defendants argue that Plaintiff has no evidence to raise the inference that her involvement in the 1997 discrimination suit caused Warden Merline to treat disciplinary actions involving Mrs. Johnson differently.  (Def.'s Br. at 18-26.)

Ordinarily, a plaintiff establishes causation by showing temporal proximity between the protected activity and the retaliatory conduct.  Berry v. N.J. State Prison, No. 07-2284, 2009 WL 4827500, at *2 (D.N.J. Dec. 10, 2009).  In this case, Warden Merline could have begun

13

retaliating against Plaintiff when he became Warden of the Atlantic County Jail in 2000.

Plaintiff does not allege retaliation until 2005.  This period of roughly five years is not unduly

suggestive of causation.  See id. (5 month time-lag between complaint and adverse action not

"'so unusually suggestive' that temporal proximity alone creates a presumption of causation")

(citation omitted); Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004)

(two month time-lag between protected activity and alleged retaliation does not necessarily give

rise to inference of causation).

       If the timing of the retaliation alone is not so unduly suggestive as to give rise to the

inference of causation, the plaintiff may show causation through other means such as

demonstrating a "pattern of antagonism," Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-

91 (3d Cir. 2000), or that the employer gave inconsistent reasons for the adverse action, Waddell

v. Small Tube Prods., Inc., 799 F.2d 69, 73 (3d Cir. 1986).  In this case, Plaintiff has not

demonstrated a pattern of antagonism sufficient to link the alleged retaliation to the 1997 lawsuit

because the alleged pattern of retaliation did not begin until some five years later.  C.f. Robinson

v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 894-95 (3d Cir. 1993) (finding a pattern of

antagonism where the defendant began taking adverse action against the plaintiff soon after his

initial complaint and continued doing so until plaintiff's ultimate discharge almost two years

later).  Neither does Plaintiff argue that Warden Merline has given her inconsistent reasons for

his disciplinary actions.  Rather, Plaintiff attempts to demonstrate causation by showing that

Warden Merline has disciplined other plaintiffs in the 1997 lawsuit disproportionate to non-

plaintiffs in that lawsuit, particularly white male officers.  (Pl.'s Op. Br. at 16.)  In support of this

argument, Plaintiff offers the deposition testimony of two of the other seventeen plaintiffs in the

1997 discrimination suit, namely Sergeants Verneda Hall and Iris Quezerque.  (Id.)

Sergeant Hall clearly feels that she is being retaliated against by Warden Merline.  (See Pl.'s Op. Br. Ex. H at 41:3-18) (Q: "[Y]ou indicated that you believe that you were being retaliated against by Gary Merline? A: Yes.").  It is not clear whether Sergeant Hall believes that Warden Merline is motivated to retaliate against her on the basis of her involvement in the 1997 lawsuit.  (See id. at 8:25-9:6) ("Q: Did you feel that you were being retaliated against because of your previous lawsuit? . . . A: I believe I was being retaliated against because of previous relationship with the Warden Merline.").  The previous relationship with Warden Merline arises from events subsequent to the filing of the 1997 lawsuit.  (See id. at 12:17-20.)

Sergeant Hall is also not sure whether she is discriminated against on the basis of her sex.  (See id. at 10:11-14) ("Q: Now, did you feel that you were being discriminated against because you were female? . . . A: I don't know – well, put it this way.  I can't say because I was female . . . .").  Sergeant Hall is not certain whether she is disciplined more harshly than male officers.  (See id. 18:10-16) ("Q: Did you receive the same disciplinary sanctions from Warden Merline as the other male officers did for the same infractions? A: I don't know because I was never informed of what kind of infraction that they received.")  When pressed for specific examples of Warden Merline's retaliation for her role in the 1997 lawsuit, Sergeant Hall responded with her general belief that male officers are disciplined differently than she is for similar offenses.  (See id. at 42:24-43:8) ("Q: And tell me exactly what it is that Gary Merline has done since 2001 that you believe is retaliation for the prior lawsuit to you. A: To me, I believe that he's – there's a lot of sergeants that just in general talking that have stated in different write-ups that they got on sanction that they received, and me comparing them to what the sanction that I received and what

15

they got, I thought it was a difference in it and disparity because mines was always heavier.").

Sergeant Quezerque also feels that Warden Merline has retaliated against her.  Like Sergeant Hall, Sergeant Quezerque's belief appears to be based on the idea that she is being treated unfairly because she is a woman.  (See Pl.'s Op. Br. Ex. I. at 71:23-72:8) ("Q: Did you feel that you were being discriminated against? . . . [A:] I felt that a lot of it was unfair. Q: Okay. Unfair because they were picking on you in retaliation? . . . [A:] Well, because I received a disciplinary where there were other people involved and they got lesser or none.").

Unlike Sergeant Hall, Sergeant Quezerque gave specific examples of disproportionate punishment.  For example, Sergeant Quezerque testified that she was involved in an incident in the admissions department where a number of male officers used excessive force on a new admission.  Sergeant Quezerque was disciplined, but the male officers were not.[5]  (See id. at 97:24-99:2.)  Sergeant Quezerque also testified to a time where both she and her male supervisor misread the same two warrants.  She was disciplined, but her male supervisor was not.[6]  (See id. at 99:7-100:17.)  Finally, Sergeant Quezerque testified to a time when both she and a different male supervisor forgot to issue an ankle bracelet to a discharged prisoner.  Although both received three-day suspensions; the supervisor's suspension was held in abeyance; whereas, Sergeant' Quezerque's suspension was not.  (See id. at 100:19-101:19.)

Plaintiff has not made out a prima facie case of retaliation because she does not offer any evidence to link the alleged unfairness of her punishments with the filing of the 1997 discrimination suit.  As an initial matter, the Court notes that Plaintiff's evidence lacks a smoking

---

[5]  Sergeant Quezerque settled these charges with Warden Thomas.

[6]  Sergeant Quezerque settled these charges with Warden Thomas.

gun.  For example, she does not offer evidence that Warden Merline ever stated or insinuated to her that she was being punished because of her role in the 1997 discrimination suit or that any of her alleged tormenters ever stated or insinuated the same.  Moreover, Plaintiff lacks sufficient circumstantial evidence to raise a reasonable inference that Plaintiff's disciplinary grievances are linked to the 1997 suit.  Of the seventeen other plaintiffs in the 1997 action, Plaintiff offers the deposition testimony of two.  Both believe they have been treated unfairly – even "retaliated" against – but neither testifies to anything that would link their objections to the discipline they have subsequently received with their participation in the 1997 discrimination lawsuit.  Indeed, both Sergeants Hall and Quezerque appear to be of the opinion that they are being treated differently on the basis of their sex, not their participation in that suit.  Finally, Plaintiff offers no evidence that would explain why Warden Merline would lay in wait for five years before beginning to retaliate against Plaintiff.  Accordingly, the Court concludes that Plaintiff has not produced evidence sufficient to raise the inference that the discipline Plaintiff received from Warden Merline was caused by Plaintiff's involvement in the 1997 discrimination suit.  Accordingly, summary judgment is appropriate as to Plaintiff's retaliation claim.

### D.    Hostile Work Environment Claim

Plaintiff alleges that Warden Merline created a hostile work environment by virtue of maintaining his disproportionate punishment regime as Mrs. Johnson was forced to work each day secure in the knowledge that she would not be given a fair shake should she find herself in an altercation with a white male prison guard.

It is well settled that a plaintiff can establish a violation of Title VII and the LAD through proof that sexual or racial harassment unreasonably interfered with a plaintiff's job performance

17

or created an intimidating, hostile, or offensive work environment.  Weston v. Pennsylvania, 251 F.3d 420, 425-26 (3d Cir. 2001) (citing Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65 (1986)) (Title VII hostile work environment claim based on sexual harassment); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996) (Title VII hostile work environment claim based on racial harassment); Lehmann v. Toys "R" Us, Inc., 626 A.2d 445 (1993) (LAD hostile work environment claim based on sexual harassment); Taylor v. Metzger, 706 A.2d 685 (1998) (LAD hostile work environment claim based on racial harassment).

The elements of hostile work environment claims under Title VII and LAD are rather similar.  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (observing that the elements of a LAD hostile work environment claim "closely resemble" a Title VII hostile work environment claim).  Accordingly, the Court's analysis of Plaintiff's Title VII and LAD hostile work environment claims applies equally to both claims.  See Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 411 (D.N.J. 2003) (analyzing plaintiff's Title VII and LAD hostile work environment claims under same standard and citing cases in support of this approach).

To establish a hostile work environment, the plaintiff must show that (1) the employee suffered intentional discrimination because of her race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the [employee]; and (4) the discrimination would detrimentally affect a reasonable person of the same race or sex in that position.  See id.; Weston, 251 F.3d at 426.  Because Warden Merline was Plaintiff's supervisor, Atlantic County may be liable for his actions as its agent.  See Robinson v. Home Depot, Inc., No. 06-935, 2009 WL 2960990, at *20 (D.N.J. Sept. 11, 2009) (citing Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998)).

18

Defendants argue that Plaintiff does not have evidence to raise the inference that Warden Merline disciplined Plaintiff disproportionately on the basis of her sex or race.

Racial and sexual harassment can take both overt and covert forms, and both forms may form the basis for unlawful harassment.  Hargrave, 262 F. Supp. 2d at 412.  Where the offensive conduct has overt sexual or racial overtones, the intent to discriminate on the basis of race or sex should be recognized as a matter of course.  Id. (citing Andrews v. City of Philadelphia, 895 F.2d 1469,1482 n.3 (3d Cir. 1990)).  Where the offensive conduct is facially neutral, a more fact intensive inquiry is appropriate.  Id.  At bottom, the plaintiff must show that her race or sex was a substantial factor in the harassment and that she would have been treated differently were her sex and race different.  Id. (citing Aman, 85 F.3d at 1083).

In this case, Plaintiff offers to prove that Warden Merline's disciplinary decisions in incidents involving Mrs. Johnson created a hostile working environment by showing that Warden Merline either punished Plaintiff more severely, or punished her alleged harassers less severely, than he would have had Plaintiff not been an African-American female.  The disciplinary actions of which Plaintiff complains can be grouped into three categories, namely (1) incidents relating to Officer Brown; (2) the urination incident involving Sergeant Gazzara and Lieutenant Bondisky; and (3) incident related to Sergeant Laney.  The Court will review Plaintiff's evidence with respect to each of these three categories to determine whether it raises the inference that Warden Merline disciplined Plaintiff disproportionately on the basis of her sex or race.

### 1.    Incidents Related to Officer Brown

Plaintiff complains that Officer Brown made four "false" reports against her and that Warden Merline did not investigate these complaints, but rather simply punished her unfairly.

19

Plaintiff's disciplinary record indicates that on April 9, 2005 she told Officer Brown that she would not come to his assistance if he was in danger at the prison. The disciplinary record indicates that Plaintiff received a reprimand as a result of this incident. Plaintiff claims that if Warden Merline had objectively investigated this incident he would have discovered that Plaintiff and Officer Brown worked different shifts and that Officer Brown therefore had no reason to fear for his safety. Plaintiff offers no evidence to indicate that Warden Merline disciplined her in an overtly sexist or racist manner. Plaintiff offer no evidence that white males committed similar offenses and received less or no discipline.

Plaintiff's disciplinary record indicates that on June 15, 2006, Plaintiff was overheard making an inappropriate, offensive, and intimidating comment regarding Officer Brown and that Plaintiff was not entirely truthful during the subsequent investigation.[7] Although Plaintiff was initially recommended a twenty-five day suspension as a result of this incident, her disciplinary record reflects that a three-day suspension was ultimately imposed. Plaintiff alleges that a proper investigation would have revealed that the nurse who allegedly overheard the inappropriate comments was lying because she was having an affair with Officer Brown. Again, Plaintiff offers no evidence that Warden Merline disciplined her in an overtly sexist or racist manner.

Plaintiff does, however, offer evidence of Warden Merline punishing a white male officer for similar conduct. Specifically, Plaintiff offers her deposition testimony that Officer Pittman

---

[7] The following day, on June 16, 2006, Plaintiff testified that she was called into the Investigations Unit and "read her rights in regards to an investigation of her wherein Officer Brown alleged that he overheard Officer [Johnson] state to another officer that she didn't want any more trouble and didn't want anybody writing her up so she moved away from Officer Brown and moved to another side just prior to muster." Plaintiff does not testify that Warden Merline punished her as a result of this incident.

twice used loud and offensive language towards her and that Warden Merline issued Officer

Pittman two-day and six-day suspensions, despite the fact that Officer Pittman apparently has a

major disciplinary infraction in his record.  This evidence fails to raise an inference that Warden

Merline punished Plaintiff disproportionately on the basis of her sex and race.  Plaintiff's three-

day suspension is more than Officer Pittman's two-day suspension, but less than his six-day

suspension.  Although Officer Pittman apparently does not have a clean disciplinary history,

neither does Plaintiff.

       Finally, Plaintiff's disciplinary record indicates that on September 13, 2006, she

abandoned her post before being relieved by Officer Brown and that Plaintiff was not entirely

truthful in the subsequent. investigation.  Plaintiff's disciplinary record indicates that Plaintiff

received a six-day suspension as a result of this incident.  Plaintiff maintains that the charge is

false and that the County refused to consider any of her explanations about what actually

happened.  The Plaintiff notes Warden Merline was directly involved in the investigation and that

he ordered Plaintiff to give audio taped statements despite the fact that there is no prison policy

requiring such statements.  Again, Plaintiff does not testify that Warden Merline punished her in

an overly sexist or racist manner.  Neither does Plaintiff offer any evidence of white male officers

who left their post, lied in the subsequent investigation, and were given lighter punishment.

### 2.     The Forced Urination Incident

       On June 25, 2006, Plaintiff was assigned to work at the Annex D Dorm.  She experienced

the urge to go to the lavatory.  She requested Sergeant Gazzara and Officer DeWese to unlock the

door to Annex D Dorm so that she could relieve herself.  Sergeant Gazarra and Officer DeWese

refused Plaintiff's repeated requests over a period of twenty to thirty minutes.  As a result,

Plaintiff urinated on herself and cancelled her pre-scheduled overtime shift that day.

Warden Merline took disciplinary action against Sergeant Gazzara and Officer DeWese for their role in the incident.  Plaintiff was not disciplined for her role in the incident.  During the investigation of the incident, there was some confusion over whether Plaintiff informed Lieutenant Bondisky as to the reason she was cancelling her pre-scheduled overtime shift or whether Lieutenant Bondisky learned of the reason for Plaintiff's cancellation through another officer.  Apparently, Plaintiff was interviewed as a part of the investigation, and she represented that she told Lieutenant Bondisky directly; whereas, Warden Merline ultimately determined that she did not.  As a result, Plaintiff was "counseled" for making false statements during the investigation.

There can be no doubt that causing a fellow officer to urinate on herself in plain view of her colleagues and prison inmates is demeaning and potentially harassing behavior.  Plaintiff concedes, however, that Warden Merline disciplined the officers involved and that Warden Merline did not punish her for being a victim.  Plaintiff does not offer evidence that officers engaged in similar conduct towards male officers and were punished more severely.

### 3.    The Sergeant Laney Incident

Finally, Plaintiff alleges that she was the victim of an abusive exchange between herself, Officer Almeida, and Sergeant Laney.  Plaintiff was not disciplined as a result of this incident.  Plaintiff concedes that Sergeant Laney was disciplined as a result of this incident, though Plaintiff suspects that the punishment does not meet the offense.  Plaintiff points to no evidence to show that Warden Merline gave Sergeant Laney a lighter punishment than he would have had Sergeant Laney yelled at a white male officer.

In toto, Plaintiff has come forward with three instances where she believes Warden Merline punished her when he should not have and three instances where Warden Merline did not punish her alleged harassers severely enough.  Critically, Plaintiff offers the fact-finder almost no opportunity to compare the disciplinary actions Warden Merline took against Plaintiff for incidents in which she was involved against the disciplinary actions Warden Merline took in similar incidents where a female African-American officer was not involved.   The one time Plaintiff does provide this point of comparison, it does not tend to prove her point.  Accordingly, the Court concludes that Plaintiff has not shown evidence sufficient to raise the inference that Plaintiff was disciplined disproportionately, let alone the inference that the allegedly disproportionate discipline was because of sex or race.

Plaintiff counters this conclusion with the deposition testimony of Sergeants Hall and Quezerque.  As an initial matter, the Court notes that Sergeant Hall's testimony is largely unhelpful as a comparison mechanism as Sergeant Hall was unable to point to any specific instances where Warden Merline disciplined white male officers differently.  Sergeant Quezerque, on the other hand, testified to a series of incidents which, if believed, support the inference that Sergeant Quezerque was discriminated against on the basis of sex or race.  By extension, her testimony may be said to support the inference that any disproportionate punishment Warden Merline issued to Mrs. Johnson was animated with the same sexist or racist animus he displayed in his disciplinary dealings with Sergeant Quezerque.  Mrs. Johnson would ask the jury to go one step further, however, and essentially conclude that the discipline issued by Warden Merline to Mrs. Johnson was both disproportionate and motivated by sex and/or race solely because the discipline issued by Warden Merline to Sergeant Quezerque may support such

23

an inference as to Sergeant Quezerque.  The Court does not believe Sergeant Quezerque's testimony reasonably provides such an inference.  As noted, Mrs. Johnson simply has no evidence that the disciplinary actions taken against her (or against her alleged harassers) was in any way disproportionate.  Because the Court concludes that Plaintiff does not have evidence to support the proposition that she was disproportionately disciplined, Plaintiff cannot use Warden Merline's disciplinary actions as a basis for her hostile work environment claim.

Plaintiff's hostile work environment claim is also predicated on the individual actions of Sergeant Gazzara and Officer Pittman.  Specifically, Plaintiff provided deposition testimony that Officer Pittman uses profanity towards her, talks down to her, and has a problem with females.  In addition to his role in the urination incident, Plaintiff complains that Sergeant Gazzara is more abrupt with female officers than male officers, and directed a racial slur towards her.

An employer is not liable for the harassing conduct of a mere co-worker unless management knew, or should have known, about the harassment.  Heitzman v. Monmouth County, 728 A.2d 297, 303 (N.J. Super. Ct. App. Div. 1999) (citing Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1421 (7th Cir. 1986)).  Even if the Court assumes for the moment that Officer Pittman's verbal conduct towards Plaintiff rose to the requisite level of severity and regularity, Plaintiff has not brought to the Court's attention any evidence that prison officials knew or should have known that Officer Pittman was creating such a hostile work environment and did nothing about it.  Accordingly, the Court concludes that Plaintiff has not shown a triable issue with respect to Officer Pittman's conduct.

On the other hand, an employer can be held liable for the unlawful harassment of a supervisor where "an employer delegates the authority to control the work environment to a

supervisor and that supervisor abuses that delegated authority. . . ."  Lehmann v. Toys "R" Us, Inc., 626 A.2d 445, 462 (N.J. 1993).  In determining whether an individual is a supervisor, the Court must query "whether the power the offending employee possessed was reasonably perceived by the victim, accurately or not, as giving that employee the power to adversely affect the victim's working life."  Funk v. Harcourt Co., No. 08-1841, 2009 WL 4827837, at *3 (D.N.J. Dec. 9, 2009) (citing Entrot v. BASF Corp., 359 819 A.2d 447 (N.J. Super. Ct. App. Div. 2003)) (emphasis omitted).  "Relevant factors include the power to fire or demote, the power to direct job functions, and any evidence that the alleged harasser possessed influence to control the workplace or restrict the alleged victim's freedom to ignore the alleged conduct."  Id.

In this case, the actions Plaintiff attributes to Sergeant Gazzara appear to support a prima facie case of hostile work environment.  Apparently, Sergeant Gazzara is frequently abrupt with Plaintiff and other female officers and once directed a racial slur towards Plaintiff.  Ordinarily such conduct – though clearly uncivil – would not be considered severe or pervasive enough to create an unlawfully hostile work environment.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (observing that the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code'") (citation omitted).  When these incivilities are viewed in concert with the forced urination incident, however, Sergeant Gazzara's pattern of behavior could be regarded by a reasonable juror in a different light, namely that Sergeant Gazzara intentionally discriminated against Mrs. Johnson in a severe and regular manner on the basis of her race or sex.  Moreover, the Court believes it goes without saying that a reasonable jury could conclude that the conditions of a correctional officer's workplace have been substantially altered where a sergeant essentially forces her to urinate on herself in plain

25

view of her colleagues and the prisoners with whose oversight she is charged.

Although the parties do not directly address the question of whether Sergeant Gazzara was Plaintiff's supervisor, Plaintiff's evidence supports the proposition as Sergeant Gazzara apparently controlled Plaintiff's ability to leave, both physically and from the perspective of duty, Annex D to relieve herself.  Accordingly, the Court concludes that summary judgment is not appropriate at this time with respect to Plaintiff's hostile working environment claim predicated upon Sergeant Gazzara's conduct in the urination incident.

### E.    Disparate Treatment Claim

To establish a prima facie case of discrimination a plaintiff must show: (1) that he or she belongs to a protected class; (2) that he or she suffered a materially adverse employment action; and (3) that he or she was treated less favorably than similarly situated individuals outside of the protected class.  McKinnon v. Gonzales, 642 F. Supp. 2d 410, 434 (D.N.J. July 24, 2009).  It is undisputed that Plaintiff is a member of a protected class as she is an African-American female. As the Court noted in its discussion of Plaintiff's hostile work environment claim, however, Plaintiff has not produced evidence to support the inference that she was treated dissimilarly. "To be deemed 'similarly situated' a plaintiff must show 'that the employee's acts were of 'comparable seriousness' to [her] own infraction.  O'Neill v. Potter, No. 07-5045, 2009 WL 2168712, at *4 (D.N.J. July 17, 2009) (citing Crumpton v. Potter, 305 F. Supp. 2d 465, 472 (E.D. Pa. 2004)).  Here, as the Court has gone to great lengths to explain above, Plaintiff simply does not have any comparable evidence of disproportionate punishment from which a jury could reasonably infer a prima facie case of discrimination.  Accordingly, summary judgment is appropriate as to Plaintiff's disparate treatment claim.

26

F.      **Liability of Individual Defendants**

Title VII prohibits an "employer" from engaging in discrimination.  See 42 U.S.C. §

2000e-2.  As such, Title VIII does not provide for liability against individual employees.  Fryar v.

Verizon Wireless, No. 09-2303, 2010 WL 421121, at *3 (D.N.J. Feb. 1, 2010) (citing Sheridan v.

E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996)); see Wyss v. Gen.

Dynamics Corp., 24 F. Supp. 2d 202, 204 n.2 (D.R.I. 1998) (observing that the majority of

circuits agree that Congress did not intend individual liability under Title VII).

On the other hand, the LAD provides for individual liability by making it unlawful for

"any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce

the doing of any of the acts forbidden [by the LAD], or to attempt to do so."  N.J. Stat. Ann. §

10:5-12(e).  To be liable as an aider or abettor, "(1) the party whom the defendant aids must

perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his

role as part of an overall illegal or tortious activity at the time that he provides the assistance; and

(3) the defendant must knowingly and substantially assist the principal violation."  Coulson v.

Town of Kearny, No. 07-5893, 2010 WL 331347, at *5 (D.N.J. Jan. 19, 2010) (citing Tarr v.

Ciasulli, 853 A.2d 921 (N.J. 2004)).

In this case, Plaintiff argues that aider and abettor liability is appropriate on the basis of

the individual defendants' complicity in Warden Merline's alleged scheme to disproportionally

punish Mrs. Johnson.  The Court has already determined, however, that Mrs. Johnson has not

met her burden of showing a genuine issue of material fact on the issue of whether Warden

Merline discriminated against Plaintiff by way of his disciplinary decisions.  As a consequence,

Plaintiff has also failed to raise a genuine issue as to the individual defendant liability as aiders

27

and abettors of this scheme.  In other words, the Court need not consider whether the actions of

the individual defendants rise to the level of aiding and abetting, because Plaintiff cannot

demonstrate the liability of their alleged principal in the first instance.

**IV.    CONCLUSION**

        For the reasons expressed above, the Court will grant Defendants' motion for summary

judgment with respect to Plaintiff's claims against Warden Merline, Lieutenant Bondisky,

Sergeant Gazzara, Officer Brown, Officer Pittman, and Officer Jamieson in their individual

capacities.  The Court will further grant Defendants' motion for summary judgment with respect

to Plaintiff's disparate treatment and retaliation claim in their entireties and so much of

Plaintiff's hostile work environment claim predicated on Warden Merline's disciplinary actions.

The Court will deny Defendants' motion for summary judgment with respect to Plaintiff's hostile

work environment claim predicated upon the conduct of Sergeant Gazzara


Dated: 3-3-2010                                          /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge