NOT FOR PUBLICATION (Doc. No. 29)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
RHONDA DENSON JOHNSON,              :
                                    :
            Plaintiff,              :     Civil No. 07-4212 (RBK/AMD)
                                    :
       v.                           :     **OPINION**
                                    :
ATLANTIC COUNTY, et al.,            :
                                    :
            Defendants.             :
_____ :

**KUGLER**, United States District Judge:

This matter comes before the Court on a motion by Defendants Atlantic County and Sergeant Gazzara (collectively, "Moving Defendants") for reconsideration of this Court's March 3, 2010 Order, granting in part and denying in part the motion for summary judgment filed by Defendants Atlantic County, Gary Merline, James Gazzara, Joseph Bondisky, John Brown, Edward Pittman, and Henry Jameison (collectively, "Defendants"). For the reasons that follow, the Moving Defendants' motion will be denied.

**I.     BACKGROUND**

Plaintiff Rhonda Denson Johnson ("Plaintiff") is a corrections officer at Atlantic County Jail and is employed by Atlantic County Department of Public Safety. In 1997, Mrs. Johnson filed a race and gender discrimination lawsuit against the Atlantic County Jail along with seventeen other plaintiffs. At that time, Warden Gary Merline was a sergeant in the Internal

1

Affairs Division of the Atlantic County Jail. There is some dispute over his level of involvement in the investigation of the 1997 lawsuit. Plaintiff alleges that then-Sergeant Merline was in charge of investigating many of the disciplinary actions taken against the plaintiffs in that case; whereas, Atlantic County denies these allegations. In any event, Gary Merline was promoted to Warden of the Atlantic County Jail in 2000, and the eighteen plaintiffs settled their discrimination suit in 2001.

On November 28, 2006, Mrs. Johnson filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging, in essence, that Warden Merline was "retaliating against her directly and indirectly by using his loyal supervisors [Lieutenant] Bondisky, [Sergeant] Gazzara, and [Sergeant] Laney, all of whom are white males" as a consequence of Plaintiff's involvement in the 1997 discrimination suit. (Pl.'s Op. Br. Ex. B. at 1.) The charge of discrimination provided three examples of Mrs. Johnson's complaints. First, Mrs. Johnson complained that in late 2005 - 2006, Warden Merline punished her on the basis of four complaints filed against her by Officer Brown. According to Mrs. Johnson, the complaints were false and Warden Merline would not have punished Mrs. Johnson on the basis of these "false complaints" if she were a white male officer. Second, Mrs. Johnson complained that during the Summer of 2006, Sergeant Gazzara and Lieutenant Bondisky refused to cover her duty position when she had to use the restroom, resulting in her urinating upon herself. According to Mrs. Johnson, she was "written up" by Warden Merline for lying during the subsequent investigation. Finally, Mrs. Johnson complained that she was falsely accused of refusing to let a fellow officer into a pod to which she was assigned, which resulted in Sergeant Laney yelling and screaming at her without listening to her side of the story. The EEOC issued

Mrs. Johnson a right to sue letter on February 28, 2007.

Plaintiff filed a complaint against Atlantic County, Warden Merline, Lieutenant Bondisky, Sergeant Gazzara, Officer Brown, Officer Pittman, and Officer Jamieson in New Jersey Superior Court. Sounding in four counts, the Complaint alleges retaliation, disparate treatment on the basis of sex and race, and the maintenance of a hostile work environment. On September 4, 2007, Defendants removed the case to federal court. On June 12, 2009, Defendants moved for summary judgment on all counts of Plaintiff's Complaint. By order issued on March 3, 2010, the Court granted Defendants' motion for summary judgment with respect to Plaintiff's claims against Warden Merline, Lieutenant Bondisky, Sergeant Gazzara, Officer Brown, Officer, Pittman, and Officer Jamieson in their individual capacities. The Court further granted Defendants' motion for summary judgment with respect to Plaintiff's disparate treatment and retaliation claim in their entireties and so much of Plaintiff's hostile work environment claim predicated on Warden Merline's disciplinary actions. The Court denied Defendants' motion for summary judgment with respect to Plaintiff's hostile work environment claim predicated upon the conduct of Sergeant Gazzara.

On March 12, 2010, Defendants filed the instant motion for reconsideration, arguing that the Court made several factual errors and that complete summary judgment was appropriate. Plaintiff opposed the motion on March 23, 2010. Accordingly, the matter is ripe for disposition.

**II.    STANDARD**

In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration. Church & Dwight Co. v. Abbott Labs., 545 F. Supp. 2d 447, 449 (D.N.J. 2008). This rule "permits a party to seek reconsideration by the Court of matters 'which [it] believes the Court has

3

overlooked' when it ruled on a motion." NL Indus., Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 515 (D.N.J. 1996) (quoting local rule); see also United States v. Compaction Sys. Corp., 88 F. Supp. 2d 339, 345 (D.N.J. 1999) (noting that party seeking reconsideration must show "that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision"). "The standard of review involved in a motion for [reconsideration] is quite high, and therefore relief under this rule is granted very sparingly." United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994) (citing Maldonado v. Lucca, 636 F. Supp. 621, 630 (D.N.J. 1986)). In order to prevail, the party moving for reconsideration must "show[] at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [ruled on] the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

Rule 7.1(i) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). "A motion that merely raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion, but should be dealt with in the normal appellate process." Church & Dwight Co., 545 F. Supp. 2d at 450 (citing Bowers v. Nat'l Collegiate Athletic Ass'n, 130 F. Supp. 2d 610, 612 (D.N.J. 2001)).

### III. DISCUSSION

The Moving Defendants argue that the Court misrepresented several issues of fact that if properly understood would have resulted in granting Defendants' motion for summary judgment in its entirety. Specifically, the Moving Defendants argue that when considering Defendants'

motion for summary judgment, the Court mistakenly believed that (1) Sergeant Gazzara had previously directed a racial slur towards Mrs. Johnson, when in fact Sergeant Hall's testimony was that Sergeant Gazzara had directed a racial slur towards Sergeant Hall; and (2) Mrs. Johnson was forced by Sergeant Gazzara to urinate on herself in plain view of her colleagues and the prisoners, when in fact there is no evidence to indicate that Plaintiff urinated on herself in front of anyone.

      The first of the Moving Defendants' contentions of factual error is correct insofar as Sergeant Hall testified that Sergeant Gazzara directed the racial slur towards Sergeant Hall, not towards Mrs. Johnson. (Dep. of Hall at 34.)  The Court disagrees, however, with the Moving Defendants' second contention of error.  At the time of the alleged forced urination, Mrs. Johnson was working on the third floor of the prison in an area populated by sixty to seventy individuals. (Dep. of Johnson at 122, 140.)  She could not leave the area unassisted, there were no appropriate restrooms for her to use, and as a consequence she urinated on herself.  This incident did not occur in a vacuum.  Given Mrs. Johnson's description of the area in which she was working at the time of the forced urination, the inference that she was observed by prisoners and/or prison staff either urinating on herself or moving about the prison in an attempt to extricate herself from her soiled clothes is readily available.  Thus, it is of little moment that the record does not contain any affirmative testimony to this effect.

      More importantly, the alleged factual errors to which the Moving Defendants point do not dictate entry of summary judgment in their favor.  In denying summary judgment, the Court reasoned that the totality of the circumstances of Mrs. Johnson's experience at the prison could support a finding of a hostile work environment.  The Court observed that ordinarily conduct

5

such as using a racial slur and being frequently abrupt with female officers – although clearly uncivil – would not be considered severe or pervasive enough to create an unlawfully hostile work environment. However, the Court noted that:

> [W]hen these incivilities are viewed in concert with the forced urination incident, Sergeant Gazzara's pattern of behavior could be regarded by a reasonable juror in a different light, namely that Sergeant Gazzara intentionally discriminated against Mrs. Johnson in a severe and regular manner on the basis of her race or sex.

Johnson v. Atlantic County, No. 07-4212, 2010 WL 743930, at *14 (D.N.J. March 3, 2010).

A prison is built on the dynamics of power. Prisoners are held captive by guards. The guards effectuate this captivity, in part, by dictating the minutiae of prisoners' daily lives – when prisoners may eat, when they may sleep, when and where they may recreate, etc. The guards themselves are organized into a power hierarchy where correctional officers report to sergeants, who report to lieutenants, and so on. In this highly visible fashion, subordinates obey their superiors in return for the ability to exercise power in their name and secure in the knowledge that their superiors will support them if the need arises. In other words, power is a highly valuable commodity in the prison environment. It is used by the guards against the prisoners to keep them captive and amongst the guards themselves to maintain order and discipline towards this end.

It is against this backdrop that the jury will be asked to evaluate the environment allegedly created by Sergeant Gazzara. According to Mrs. Johnson, she was locked on the third floor of the prison and could not physically access a female restroom without the assistance of her fellow guards. She accuses Sergeant Gazzara – who by virtue of his rank held a position of authority over Mrs. Johnson – of refusing to respond to her repeated pleas for help and thereby

6

causing her to lose control of her physical faculties and urinate on herself. The act of causing a subordinate to urinate on himself or herself is a power-move, plain and simple. It is designed to send a clear message to the victim – and all who observe or otherwise learn of the act – that the aggressor is dominant and controls or "owns" the victim. This is hazing, and the law does not condone it if motivated by sex or race. See, e.g., Pospicil v. Buying Office, Inc., 71 F. Supp. 2d 1346, 1356-57 (N.D. Ga. 1999) ("An employee might thus demonstrate a hostile work environment by showing that women (or men) were targeted for extensive hazing designed to demean and denigrate their importance in the workplace.").

In a vacuum, a single incident of non-sexual hazing might not ordinarily give rise to the inference that the incident was motivated by sex. However, this particular incident of hazing did not occur in a vacuum. Rather, it occurred in a prison environment traditionally dominated by males where dominance is the name of the game. Moreover, it was effectuated, at least in part, by a male officer allegedly known for his disparate interpersonal treatment of women.[1] On these facts, a jury could reasonably find that the hazing conducted by Sergeant Gazzara was because of Mrs. Johnson's sex. See Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) (quoting Hull v. Gus Constr. Co., 842 F.2d 1010, 1014 (8th Cir. 1998) ("Intimidation and hostility toward women because they are women can obviously result from conduct other than explicit sexual

---

[1] Defendants argue that Officer Gazzara's frequent abruptness with Mrs. Johnson and other female officers does not support a pattern of discrimination based upon sex because Sergeant Hall testified at her deposition that Sergeant Gazzara is abrupt with male officers as well as female officers. Be that as it may, when asked whether she saw any situations in which Sergeant Gazzara treated female correction officers differently than male officers, Sergeant Hall stated: "Basically I saw the way he talked to a lot of females and he was more abrupt with females than he were with the guys." (Dep. of Hall at 16.) That Sergeant Gazzara is abrupt with everyone is not inconsistent with his being more abrupt with females.

7

advances.").

A fact-finder could also reasonably conclude that Sergeant Gazzara's harassment was so severe or pervasive that it altered the conditions of Mrs. Johnson's employment and created an abusive environment for her at the prison.  Factors relevant to this inquiry include: (1) the frequency of the discrimination; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the employee's work performance.  Small v. KS Engineers PC, No. 08-3458, 2010 WL 1705002, at *3 (D.N.J. Apr. 26, 2010) (citing Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001)). Forcing Mrs. Johnson to urinate on herself strikes the Court as rather severe, was certainly quite humiliating for Mrs. Johnson, and was arguably physically threatening.  Although the forced urination only occurred once, a fact-finder could reasonably conclude that it had a transcendent effect on Sergeant Gazzara's otherwise inconsequential abruptness with female officers.   A jury could find, for example, that by forcing Mrs. Johnson to urinate on herself, Sergeant Gazzara was sending a clear message of gender dominance to Mrs. Johnson and other female officers at the prison. The jury could further find that this incident made clear the import of Sergeant Gazzara's disparate interpersonal treatment of female officers at the prison over time, namely that women do not belong on the prison guard team.  Finally, a jury could find that, post-urination incident, Mrs. Johnson would have reason to question whether Sergeant Gazzara would fail to come to her assistance in the future.  It should go without saying that a female prison guard's realization that a superior officer regards her gender with such contempt that the superior officer might not come to the female prison guard's assistance in the future when needed would certainly substantially alter the conditions of the female guard's working environment.  As a consequence, summary

judgment on Plaintiff's hostile work environment claim allegedly created by Sergeant Gazzara remains inappropriate.

## IV.     CONCLUSION

For the reasons expressed above, the Court will deny the Moving Defendants' motion for reconsideration. An appropriate order shall enter.


Dated: 6-28-2010                                                       /s/ Robert B. Kugler
                                                                                                        ROBERT B. KUGLER
                                                                                                        United States District Judge